[See Cases Nos. 13,855 and 13,856.]

---

## Case No. 17,579.

### WHITMAN v. BUTLER.

[8 N. B. R. 487.] [1]

District Court, D. Rhode Island. Sept. 23, 1873.

BANKRUPTCY—MORTGAGED PROPERTY—ENJOINING SALE—AUTHORITY OF ASSIGNEE.

1. An injunction to restrain a mortgagee from making a sale of real estate belonging to a bankrupt will be granted when it appears that the mortgagee made a sale of the property before the adjudication of bankruptcy, but the purchaser, under advice of counsel, declined to

1 [Reprinted by permission.]

make payment and receive deeds therefor, and the sale sought to be enjoined is made under the same terms as before with the appendix, "the above property will be sold for account of whom it may concern."

2. The words of the appendix, "for account of whom it may concern," cannot be construed to affect the assignee and mortgagee.

3. This court can rightfully interfere even though it be alleged that the mortgagee will be injured thereby, its right being simply to regulate through the assignee, the modes and means of foreclosing the mortgage.

[Cited in Schulze v. Bolting, Case No. 12,489.]

4. The first sale was, in reality, no sale, and hence, from and after the adjudication, the mortgagee's rights and powers to sell were such, and only such, as could be exercised consistently with the provisions of the bankrupt law, and under that law the assignee is really the agent both of the mortgagee and the other creditors.

In bankruptcy.

Metcalf & Bradley, for petitioner.
Mr. Van Slyck, for respondent.

KNOWLES, District Judge. Henry Whitman, assignee in bankruptcy of Lewis P. Child, having filed his bill in equity, containing all apt and proper allegations and prayers, by petition ancillary to that suit, prays the court for a preliminary injunction to restrain the defendant, William Butler, from making sale at auction of three several parcels of real estate, under the power of sale contained in seven several mortgages held by him, executed by the bankrupt, Child, between the 31st of March, 1870, and the 14th of March, 1873, inclusive. To the pleas, allegations and evidence of the parties, I have given due consideration; the results of which I would now announce in terms as brief as may be. The controlling facts are few and undisputed, and in regard to the principles of law involved, the learned counsel of the parties were understood to be at variance on no point of much practical importance.

It appears that on the 15th of July last, the respondent, in virtue, as claimed, of his powers as mortgagee with power to sell, made sale by auction of divers parcels of real estate embraced in his aforesaid mortgages, among which parcels were two of the three described and referred to in the petition under consideration. And further, it appears, that the purchasers of these two parcels, acting, as they allege, under advice of eminent counsel, decline both to make a cash payment of five per cent. of the purchase money on the day of sale, or to make payment and receive their deeds, on the 25th of July, as prescribed by the conditions of sale, in no one of which, it is proper to remark, was embodied even an intimation, that if the purchaser refused to consummate the sale, the property would be, on a given day, or at any time, again exposed to auction on his account and risk. And thereupon, it appears, the respondent, on the 2d of August, again, as mortgagee aforesaid, advertised the said two parcels in the same terms as before, but with an appendix in these words: "The above property will be sold for account of whom it may concern." The de-

fendant, it also appeared, on the 19th of July, announced an intended sale by him as mortgagee as aforesaid of a third parcel of land, embraced in each and all of the said seven mortgages, but not offered for sale with the other parcels on the 15th of July. By agreement, the sales of each and all of these three parcels are postponed until the 22d of September inst., subject to the action of this court upon the pending petition.

Now the records of the court show that on the 17th of July, proceedings in bankruptcy were instituted against said Child, and that on the 26th of July he was adjudged a bankrupt; and also that afterward, August the 12th and 13th, Henry Whitman, being chosen and duly appointed his assignee, accepted the trust, and received from the register conveyance of the bankrupt's property in due course of law. Upon this state of facts, the petitioning assignee asks that the respondent be enjoined from making sale of said parcels, as proposed, and the two questions presented to the court are: First, can the court rightfully interfere between the parties in this matter? and, secondly, if the court have the requisite power, will it exercise that power against the protests, and to the injury, as alleged, of the respondent?

The right of the court, for satisfactory cause shown, to interpose, as prayed, is not understood to be questioned seriously at this late day in any section of the country. In an opinion reported in Re Snedaker [2] is found an expository paragraph, embodying views believed to be now everywhere recognized as incontrovertible. Treating of the relative rights and duties of the assignee in bankruptcy and the creditor of the bankrupt, secured by pledge or lien of any kind, the learned court says: "For just and equitable purposes and to guard against fraud, the act rightfully takes the pledged property or lien out of the power of the secured creditor's control or management in reducing it to money in his chosen way without responsibility, and places it in the hands of the assignee of the bankrupt, who, being an agent of the court, and at the same time the representative of the rights of all parties in interest is supposed to be above all temptation to fraud, and directs him in such capacity and under the pledge of his official bond as assignee, and under the direction of the court, to convert such mortgaged or pledged property into money, and to distribute the same under the provisions of the act, with due regard to all the priorities shown to exist in the proceedings in bankruptcy by the proof of the claims against the bankrupt. So far from taking any right or rights from the secured creditors, under the mortgage, lien or pledge by which he holds the same, it simply regulates the modes and means of foreclosing the mortgage or other lien, and of reducing such security to money, in order that the court may be able to enforce exact justice, and to see that the rights of all the creditors are secured to them under the proof of claims, and under the law.

Under this view of the law, it must be conceded and held that from and after the 26th of July, the respondent's rights and powers as a mortgagee, with power to sell, were such, and only such, as could be exercised consistently with the provisions of the bankrupt law. Prior to that date, his right and duty were to make sales and account for proceeds conformably with the requirements of the deed of mortgage; but after that date—"ita lex scripta est"—his right was to adjust his claims with the assignee, if happily he could, or to prosecute them adversely against the estate or the assignee, in mode and manner as prescribed by the bankrupt act, or in "masterly inactivity," as it were, patiently to await the action of the assignee—under the law not less his agent and representative than the agent and representative of the bankrupt and of his other creditors. So far, therefore, as concerns the parcel of land first advertised for sale on the 19th of July, and never yet exposed at auction, it is clear that the respondent must be restrained from selling save in conjunction with and with the assent, express or implied, of the petitioning assignee.

And now, as concerns the two parcels, which the respondent proposes to expose at auction a second time, "by virtue of a power of sale contained in seven deeds of mortgage"—but, it is to be noted, "for account of whom it may concern," is the status of these distinguishable in any material respect from that of the third parcel? On the 15th of July, these were set up at auction and stricken off to the bidders, the bidders, bound by the conditions, to pay down on the day of sale five per cent. of the purchase price, and to pay the residue and receive their deeds on the 25th of July. The cash payments were not made, nor does it appear that any purchaser made tender of the purchase price or demand for his deed, on the 25th. No deed passed. The attempt to sell proved, in fact, abortive, and the respondent accordingly, on the 2d of August, in effect saying to the world that no sale had been made on the 15th, advertises the said parcels for sale anew, as above stated. The new sale if made, so far as appears, would be nothing more, nothing less, than a sale under the power by the mortgagee, as would have been the first, had it been consummated by payment and conveyance. The adding to the advertisement the note, that the property will be sold for account of whom it may concern, cannot be construed as affecting the rights and duties of the assignee and the mortgagee, as indicated or defined in Re Snedaker, above quoted. The petition in bankruptcy against the mortgagor having been filed on the 17th of July, and he having been declared a bankrupt on the 26th. his property of every kind passed into the custody of the law. as of the 17th, and thereafter. the rights and powers of the mortgagee creditor were such, and such only, as are by the bankrupt law ac-

[2] [See note at end of case.]

corded to such a creditor, under such circumstances; and under that law, as we have seen, any sale of the property not authorized by the court's order, or approved by the assignee, must be held by the bench to be without law and against law.

I must be understood as here speaking only of the two parcels in question, of which no conveyance has been made. Of the dealings of the mortgagee, after the 17th of July, with or in relation to other parcels struck off at the auction of the 15th, I have no occasion here to speak. Those dealings, for aught that I would here be understood to intimate, even by implication, may have been unexceptionable in any court, whether of law, equity or bankruptcy. Sufficient it is that I here adjudge that the mortgagee's attempt or purpose to make sale anew of the aforesaid two parcels, is one which the court, on the assignee's petition, is bound to enjoin. Upon that officer the law devolves the responsibility of administering the assets of the bankrupt, empowering him to adjust the claims of mortgage and other lien creditors as he best may, or to surrender to the encumbrancer the property in question; or to dispose simply of the bankrupt's interests in the same, or (the court so ordering, upon cause shown) to sell the encumbered or mortgaged property free and exempt from all claims whatsoever, and thus compel the lien creditor to prosecute his claim against the proceeds of sale deposited in the court's registry, in manner and mode as prescribed in the bankrupt act. Upon the assignee, I repeat, the law imposes this responsibility, and confers these powers and rights; and, as is obvious, not unwisely. He is the creditor's as well as the court's officer, chosen by them, and it is to be presumed that the creditors always look to it that their nominee is in all regards competent and trustworthy. Finally, until better advised, the court must hold and rule that on the appointment of the assignee, the legal duty of the mortgagee respondent was to report to him, the assignee, the state and condition of affairs as between himself and the bankrupt's property under encumbrance to him, and devolve upon him the responsibility of repudiating or enforcing the contracts, if any, which he, the mortgagee, acting on behalf of the bankrupt mortgagor, had completed or initiated. The bankrupt law, while (as held in this district,) it requires the assignee to regard and respect all existing equities between the bankrupt and his creditor claimants, secured and unsecured, rightfully, on the other hand, requires, unless otherwise agreed and arranged with the assignee, that such claimants, the secured as well as others, shall make proof of their claims, in the mode and manner prescribed by that act, as a condition precedent to the payment of, or any payment on account of such claims. The assignee, it must be borne in mind, is the agent and representative of the secured creditor as well as of the unsecured, and bound, therefore, if satisfied that a claim is just, and a valid encumbrance, to arrange for its satisfaction at the earliest moment possible:—and it is not unusual in this district to insert in an order for a sale of property free from all encumbrances, a direction that the amount agreed or ascertained to be due an encumbrancer, be paid by the purchaser to him, as the equitable owner rather than to the assignee vendor.

Of the policy or impolicy of exposing the said two lots at auction a second time, under the mortgages, as advertised, I deem it necessary to say but a few words. One fact is in itself conclusive. The mortgagee has once sold them;—but the purchasers, under advice, distrusting the title proffered, refuse to accept their deeds, and this, it is admitted at the bar, is now known to the public at large, and were it not would necessarily be made known on the auction ground. Who, the petitioner may well ask, can be expected to bid for them, agreeing to take the title offered, even the half of their market value, assuming the title were unexceptionable? There is now,—rightfully or wrongfully,—a cloud dark and dense upon the title. Such is the fact, and in view of that, and irrespective of other considerations that might be suggested, it may well be doubted if the interests of any party can by possibility be promoted by a sale as contemplated by the respondent. That such a sale may, not to say must, prove injurious to the interests of the creditors at large is apparent,—assuming, as the court must, in view of the allegations in the complainants' bill, and his affidavits, that after satisfying all valid encumbrances upon the estates in question, there may remain a balance—more or less—for distribution among creditors in general.

If it were a conceded fact, as alleged by the respondent, that the property embraced by his mortgages, cannot by possibility be made to yield the amount justly due him, and also conceded that his mortgages are all valid and operative, as he deems them to be, and his claims under them indisputable, and that the sales of the 15th of July were not open to question, it might well be expected that between him and the assignee no controversy would arise. The assignee, it is to be presumed, would consent that the respondent deal with the property as he should see fit, without interference on his part. But unhappily, upon each and all of these points, the parties are as yet, according to the record, widely at variance, and upon and in regard to them, therefore, the court cannot, at this stage of the suit, express, entertain, or even form an opinion. Injunction as prayed for will be ordered.

[NOTE. The following case, cited in the text, is reprinted from 3 N. B. R. 629 (Quarto, 155), by permission.]